# IN THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO
## CIVIL DIVISION

R.F.
Through her Mother and Father as Next Friends
Dean and Jacqueline Fadel
1768 Chateaugay Way
Blacklick, Ohio 43004

and

Dean Fadel
1768 Chateaugay Way
Blacklick, Ohio 43004

and

Jacqueline Fadel
1768 Chateaugay Way
Blacklick, Ohio 43004

    Plaintiffs

Case No.

v.

Judge

Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

**COMPLAINT**
**[JURY DEMAND**
**ENDORSED HEREON]**

And

Jennifer Ciccarelli
Head of School at Columbus School for Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

    In her official and individual capacity
And

Pamela Hartshorne
Director of Middle School
65 S. Drexel Avenue
Bexley, Ohio 43209

    In her official and individual capacity

And

Columbus School For Girls
Board of Trustees
65 S. Drexel Avenue
Bexley, Ohio 43209

And

Michael Glimcher, Board Chair
Board of Trustees
Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209
    In his official and individual capacity

And

Lisa Young, Treasurer and Finance Chair
Board of Trustees
Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

    In her official and individual capacity

And

Steve Falk, Secretary
Board of Trustees
Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

    In his official and individual capacity

And

Chris Olsen, Nominating & Board Governance Chair
Board of Trustees
Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

    In his official and individual capacity

And

David Paragas, Diversity Chair
Board of Trustees
Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

    In his official and individual capacity

And

Christopher Graham, At Large
Board of Trustees
Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

    In his official and individual capacity

And

Liza Kessler, Development Committee Chair
Board of Trustees
Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

    In her official and individual capacity

And

Anne Jeffrey Wright
Board of Trustees
Columbus School For Girls

3

65 S. Drexel Avenue
Bexley, Ohio 43209

    In her official and individual capacity

And

Carrie Birch
Board of Trustees
Columbus School For Girls
65 S. Drexel Avenue
Bexley, Ohio 43209

    In her official and individual capacity

    Defendants

## COMPLAINT

### I. INTRODUCTION, PARTIES, JURISDICTION

1. Now come the Plaintiffs, R.F., a minor, Dean Fadel, both as next friend of R.F., and in his individual capacity, and Jacqueline Fadel, both as next friend of R.F., and in her individual capacity (hereinafter referred to as "Plaintiffs," "Plaintiff R.F", "Plaintiff Dean Fadel", and/or "Plaintiff Jacqueline Fadel") for their Complaint against the above-named Defendants do state the following. Plaintiff R.F. is a minor, not having reached the age of eighteen (18) years of age. Plaintiffs Dean and Jacqueline Fadel are the parents of R.F

2. Defendant Columbus School for Girls (hereinafter referred to as Defendant CSG) is and has been a private all girls college-preparatory day school at all times pertinent to the Complaint operating as a 501(C)(3) in Franklin County in the State of Ohio

4

Franklin County Ohio Clerk of Courts of the Common Pleas- 2021 Jan 21 3:25 PM-21CV000433

3. Defendant Jennifer Ciccarelli (hereinafter referred to as Defendant Ciccarelli or Ciccarelli) at all times pertinent to this Complaint served as Head of School at Columbus School for Girls.

4. Defendant Pamela Hartshorne (hereinafter referred to as "Defendant Hartshorne" or "Hartshorne") at all times pertinent to this Complaint served as Director of Middle School at CSG.

5. Defendants Glimcher, Young, Falk, Olsen, Paragas, Graham, Kessler, Wright and Birch (hereinafter referred to as "Defendant Board of Trustees") at all times pertinent to the Complaint served in various capacities on the Board of Trustees for the Columbus School for Girls.

6. At all times pertinent to the allegations made herein, Plaintiff R.F. was a full-time student at CSG. R.F. attended CSG starting with pre-school and continuing through the eighth grade, having been accepted initially into the preschool program, the Program for Young Children. For each of those years, Plaintiffs Dean and Jacquie Fadel signed the contract required by CSG; Attached hereto as Exhibit A is a copy of the CSG contract for the academic year 2019-2020

7. This Court has jurisdiction of the case inasmuch as all actions stated herein occurred within the State of Ohio.

8. Venue is proper in this Court pursuant to Ohio Civil Rule 3(B).

## II. FACTS

9. The CSG website promises, "She will know her power. It is not just a statement. This is our promise. Learn why girls do best in an environment created

5

specifically for them." What has happened to R.F. especially under the supervision of Hartshorne, is that CSG has shown her that she has NO power. CSG has explained with clarity that it has chosen not to create an environment specifically for her, in contradiction of the website's assertion to the contrary.

10. The CSG website states the following with regard to diversity: "At CSG, we define diversity broadly, considering each member's race, ethnicity, sexual orientation, gender, socio-economic status, physical ability, learning profile, and religious and political beliefs and ideologies as important components of that diversity."

11. CSG rejected R.F. due to her dyslexia, and due to bullying of R.F. by Hartshorne and by two students.

12. R.F. had a superior record as a CSG student. Through the years, teachers consistently commented on her excellent attentiveness in class, and her hard work ethic. There was never any negative comment or concern raised by any teacher or administrator in her eleven years at CSG regarding her behavior or social interactions with classmates. She was always secure with her friendships and friend groups.

13. In Form II, R.F. was identified with dyslexia and ADHD. Nevertheless, she demonstrated determination, grit, and courage in her studies. While she did not receive a lot of A's, she was never in jeopardy of failing any of her courses. She was never on probation. In the spring of 2018, toward the end of R.F.'s sixth grade, at a parent conference, the former director of middle school, Nola Rae Cronin told R.F.'s parents, "Any girl that works as hard as R.F. deserves to be at CSG

6

14. The academic year 2018-2019 was not easy for R. F. from an academic standpoint. The curriculum ramped up with the addition of Mandarin Chinese. R.F. was never in jeopardy of failing any course and her parents were never notified by any teacher or administrator of any concerns regarding her performance or her ability to grasp or master the material. They also were given and accepted a contract for the next (2019-2020) school year, her eighth grade. See Exhibit A, attached hereto as stated above.

15. In April of 2019, CSG announced that Cronin was leaving her position as Director of Middle School and would be replaced by Hartshorne, who had served as the Director of the CSG Upper School at the time of the announcement. Shortly after Hartshorne assumed her new responsibilities, R.F.'s parents were asked to meet with Cronin, Hartshorne, Delaney, and Learning Specialist McCloskey on April 25, 2019. They realized as soon as the meeting commenced that its purpose was to persuade them to move R.F. to a new school sooner rather than later, with the result that the CSG 2019-2020 contract would be set aside. No one at that meeting voiced any concern or issue with R.F.'s academic performance; in fact, R.F.'s grades had been good. See Exhibit B. There was no real demonstration that they had any genuine concern for R.F.'s well-being. No one at that meeting offered any form of special assistance for R.F.'s dyslexia.

16 Despite all of the knowledge and the development of effective teaching methods for people with dyslexia, CSG has caused R.F. to experience humiliation, exclusion, anxiety, and depression. She has come home from school declaring that she is stupid and a failure. R.F.'s parents are angry with the exclusion, humiliation, and anxiety that she experienced at CSG because her learning style is different. Fortunately, her

7

parents were and are able to afford the cost of tutoring and structured literacy learning from an Orton Gillingham certified teacher.

17. While acknowledging that eighth grade started well for R.F., Plaintiff Jacqueline Fadel had to request R.F's learning plan three weeks into the school year; it was not clear whether R.F ever would have even received one if her parents had not asked. Further, R.F. was not afforded the now-standard PSAT test accommodations on the practice PSAT given to 8th graders. Consequently, R.F.'s parents researched and visited other schools. R.F. applied to and was accepted at Bishop Hartley for high school; Bishop Hartley is also a "college-preparatory school." Hartshorne had implied that R.F.'s only path forward would be a school for special needs students.

18. On January 29, 2020, R.F. had a counseling session with psychologist, Dr. Cheryl Colvin, Ph.D. to assist R.F. with self-management related to anxiety and ADHD.

19. Then, on February 12, 2020, R.F.'s parents received an email from Hartshorne, indicating, "R.F. had a difficult day today." Two former friends of R.F. were belittling her, purposely tormenting her to get her in trouble. Because they had previously been close, these girls knew how to push R.F.'s buttons. The end result was that R.F. had yelled at the two girls in band class to "shut up." In a phone conversation on March 3, 2020, the band director, Kristen Cook, verified that she knew R.F. was defending herself and said she told the girls to back off. Her action conveyed her genuine concern for R.F. Shortly after that, the girls continued to tease and embarrass R.F. For example, when R.F. spilled water at her lunch table, the two girls were nearby and began to ridicule her. R.F. confided in her parents that she was upset with herself for having let

8

the girls get to her. The girls continued to harass R.F.. by starting rumors that she was autistic and was being expelled from CSG.

20. Incredibly, Hartshorne directed R.F. to apologize to the two girls who had bullied her, and completely dismissed their bullying actions. That evening, R.F. sent a joint text message to the two girls with an apology. One girl responded, but the other denied ever receiving it, with the result that two weeks later Hartshorne directed R.F. to apologize again. In the meantime, the two girls had continued to harass and taunt R.F., purposely humiliating her in one of her classes. R.F. told her parents that she was afraid of Hartshorne, but didn't explain why.

21. Following the incident with Hartshorne on February 12, 2020, Dr. Colvin recommended weekly visits with R.F. because, in Dr. Colvin's opinion, it was evident R.F. experienced trauma and suffered from PTSD. It was only through these sessions that R.F. was able to fully discuss exactly what happened between Hartshorne and the two other girls.

22. On February 13, 2020, Plaintiff Jacqueline Fadel advised Hartshorne and two other faculty members in a phone conversation that R.F. had acted in self-defense – presenting the other side of the story that Hartshorne had refused to allow R.F. to articulate. Hartshorne completely ignored this fact and instituted an over-the-top, humiliating, and unnecessary sanction upon R.F. where R.F. was treated like a prisoner, escorted to class by a teacher and placed teachers at her lunch table and in band class to monitor her. The two girls who had bullied R.F. were never further questioned or reprimanded in any way.

23. Plaintiff Jacqueline Fadel advised Hartshorne not to meet with R.F. any more unless one of her parents could be present. On the morning of February 15, 2020, Plaintiff reiterated this demand to Hartshorne in an email. In complete defiance of this demand, that afternoon Hartshorne convened a meeting with R.F. and the two bullies in her office. This meeting, organized against R.F.'s parents expressed wishes, caused more trauma to R.F. At that meeting, Hartshorne allowed one of the bullies to scream at R.F.

24. On February 26, 2020, Hartshorne again asked R.F. for evidence of her apology to the two bullies, effectively reasserting her view that the two bullies had no fault in this matter.

25. Approximately one month later, R.F. was finally able to tell her parents what Hartshorne had done to her when she was alone with Hartshorne in her office on February 12, while Hartshorne was sending her email to them. R.F. explained that during that meeting R.F. was never given an opportunity to tell her side of what had happened. R.F. described Hartshorne as having "snapped" while typing the email, and said she was terrified for her personal safety. She said that Hartshorne read the words out loud in a very scary tone as she typed them. Hartshorne then forced R.F. to read the entire email out loud. R.F. said she was numb with fear and that she has never been spoken to in such a cruel and hateful manner. It was the middle of the night when R.F. first revealed the full story from the Feb. 12 meeting – and she said it felt like Hartshorne made her read the email more than once but said she was numb from fear and disbelief that Hartshorne had accepted the other girls' lies as truth with no opportunity to defend herself. R.F. said the numbness from the terror inflicted by Hartshorne lasted a week.

Her parents can attest that she barely ate or slept for at least two weeks after. R.F. said she has re-lived the experience every day since Feb. 12. It may be noteworthy that R.F's academic learning plan says she should only be called upon to read aloud if she volunteers. Most troubling is the fact that Hartshorne represented to R.F.'s mother that she "discussed" the Feb. 12 email with R.F., which is just one of several untruths Hartshorne told R.F.'s parents.

26. R.F.'s abuse by one of the two girls continued, even though CSG classes are given in a remote learning settling. For example, one of the girls interrupted when R.F .tried to ask a teacher a question during a Zoom science session. The bullying continued in an unrelenting manner even after Hartshorne had previously assured.R.F.'s mother that the parents of the two girls bullying R.F. had been notified. Had the COVID-19 remote learning not been implemented, it is probable that R.F. would not have been able to finish the year attending CSG, given Hartshorne's treatment of R.F. and the environment Hartshorne created for R.F. Due to the trauma, R.F.'s sleep patterns did not return to normal until June 2020.

27. Upon information and belief, Plaintiffs assert that all defendants in this matter had knowledge of Hartshorne's behavior in previous instances and thus were on notice of the risk to students at CSG. These incidents prompt the obvious question of whether Hartshorne has a mental/psychological imbalance that would expose R.F. to further harm. From the parents' standpoint, CSG has failed to provide a safe environment for R.F.to learn effectively. Hartshorne was extremely unfair, cruel, inappropriate, and caused emotional trauma for R.F. Hartshorne knew that R.F. would

not be returning to CSG for the academic year 2020-2021, and obviously used this series of incidents to be sure that R.F. knew that her power would be zero.

### III. FIRST CLAIM: BREACH OF CONTRACT

28. Plaintiffs reallege paragraphs 1 through 27 as stated hereinabove.

29. Plaintiffs and Defendant CSG entered into a contract whereby CSG was to provide education to Plaintiff R.F. under Rules and Regulations located on the CSG Website. (Exhibit A, paragraph 8).

30. Plaintiff fully complied with all obligations contractually required of them, however, Defendant CSG failed to fulfill its requirements as represented and therefore have breached the contract and have caused damage to Plaintiffs as a result of the same.

### IV. SECOND CLAIM: FRAUDULENT INDUCEMENT

31. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in Paragraphs 1-30 contained herein.

32. Defendants made actual and implied false representations to Plaintiffs regarding the educational services and learning environment that CSG would provide. Defendant CSG represented that it would provide to Plaintiff a learning environment suitable for her.

33. Defendants' representations were material to the transaction entered into between Plaintiffs and Defendants

34. Defendants had knowledge of the falsity of their representation or such recklessness or utter disregard for the truthfulness of their statements that knowledge may be inferred.

35. Defendants intended to induce reliance on their representations

36. Plaintiffs justifiably relied on Defendants' representations

37. Plaintiffs suffered injury proximately caused by their reliance.

### V. THIRD CLAIM; VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

38. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in Paragraphs 1-37 contained herein.

39. Title III of the Americans with Disabilities Act of 1990 applies to all private entities, including private schools. See 42 U.S.C.A. 12181 (7)(J) and 42 U.S.C.A. 12182(a),

40. Defendants discriminated against Plaintiff R.F. on the basis of her disability, dyslexia, in the full and equal enjoyment of the services, facilities, privileges, advantages and accommodations offered at Columbus School for Girls.

41. Plaintiffs suffered harm as the result of Defendants' discrimination against Plaintiff R.F.

### VI. FOURTH CLAIM: NEGLIGENCE AND GROSS NEGLIGENCE

42. Plaintiffs repeat, re-allege, and incorporate by fence the allegations in Paragraphs 1-41 discussed herein.

43. Defendants owed and assumed a duty of care to Plaintiff R.F. to provide a safe environment for Plaintiff R.F.

44. Defendants breached their duty of care to Plaintiff R.F. when they failed to protect Plaintiff R.F. from bullying by other students and by Hartshorne.

45. As a result of Defendants' breach of their duty of care to Plaintiff R.F., Plaintiffs have suffered damage in the form of physical and emotional harm.

## VII. FIFTH CLAIM: NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46. Plaintiffs reallege the claim set forth in paragraphs 1 through 45 and incorporate them herein.

47. Defendants owed Plaintiffs a duty to refrain from negligently or intentionally injuring them and a duty to create a learning environment consistent with its representations, resolutions and with applicable law. Defendants have breached their duty to Plaintiffs.

48. The Defendants' actions constitute an outrageous invasion of Plaintiffs' personal rights.

49. Defendants acted willfully and maliciously, with spite and ill will, and with cavalier disregard to Plaintiffs' personal rights.

50. The Defendants' negligent and intentional actions caused injuries to Plaintiffs in the form of mental anguish, loss of self-esteem and other emotional distress as well as causing physical injury in the form of adverse health effects.

WHEREFORE, Plaintiffs pray that the Court issue an Order against Defendants as follows:

A. Declaring that the above-described acts and practices violate state and federal laws referenced;

14

B. Preliminarily enjoining and permanently restraining these and other such violations;

C. Directing Defendants to take such affirmative actions as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect R. F.

D. Directing Defendants to pay damages to R. F. for the injuries she has suffered in the amount of $500,000 or more.

E. Awarding to Plaintiffs compensatory damages for their mental anguish, pain and suffering, and other non-pecuniary losses in an amount in excess of One Million Dollars ($1,000,000.00);

F. Awarding to Plaintiffs punitive damages in an amount to be determined at trial;

G. Awarding to Plaintiffs the cost of this action, together with reasonable attorneys' fees; and

H. Granting to Plaintiffs such other relief as may be just and equitable.

Respectfully submitted,

FARLOW & ASSOCIATES LLC

Beverly J. Farlow (0029810)
bfarlow@farlowlaw.com
715 Shawan Ralls Dr. Suite 2054
Dublin, Ohio 43017
(614) 734-1270
Attorney for Plaintiffs

## JURY DEMAND

Plaintiffs demand a trial by jury.

Beverly J. Farlow (0029810)

## APPENDIX

Exhibit A: Signed CSG Contract for the 2019-2020 academic year.

Exhibit B: R.F. Grade report for 2018-2019 academic year